271 So.2d 798 (1973)
Steven M. SMILES et al., Appellants,
v.
Betty McCutcheon YOUNG, As Administratrix of the Estate of Donald T. McCutcheon, Deceased, and Madeline McCutcheon, Appellees.
No. 72-717.
District Court of Appeal of Florida, Third District.
January 8, 1973.
Rehearing Denied February 5, 1973.
*799 Carey, Dwyer, Austin, Cole & Selwood and Steven Berger, Miami, for appellants.
Horton, Schwartz & Perse, Snyder, Young & Stern, Miami, for appellees.
Before PEARSON, CHARLES CARROLL and HENDRY, JJ.
PEARSON, Judge.
The appellants were the defendants in a personal injury action brought by the appellees. A settlement was reached through negotiation, the amount of the settlement was paid, the parties stipulated for the dismissal *800 of the cause with prejudice to the plaintiffs, and final judgment was entered on the stipulation. Thereafter, the plaintiffs brought a motion pursuant to Rule 1.540(b)(1) and (3), RCP, 31 F.S.A.,[1] seeking relief from the judgment. The trial court, after an evidentiary hearing, granted the motion, vacated the judgment, and directed the clerk to pay over to the defendants, upon their request, the sum of $9,453.68 which the plaintiffs had deposited in the registry of the court.
This appeal by the defendants is from the order vacating the judgment. We hold that the trial court abused the discretion vested in it by Rule 1.540(b)(1) and (3), RCP, 31 F.S.A., in vacating the judgment based upon a valid settlement and we reverse.
The appellants have conceded for the purposes of this appeal that we may take as proven in the trial court each and every allegation made by the appellees as movants in their motion for relief. The motion in eleven paragraphs alleged in substance, as follows:
1. The action as filed sought recovery for personal injuries to both Mr. and Mrs. McCutcheon and derivative damages sustained by Mr. McCutcheon.
2. The plaintiff, Donald T. McCutcheon, underwent an operation for removal of his spleen and was left with minor permanent injuries.
3. The plaintiff, Madeline McCutcheon, sustained relatively minor injuries except for her neck or cervical region which gave her pain up to and including the time of the settlement.
4. The settlement negotiations were conducted in the belief that Mrs. McCutcheon's pain was caused by a sprain superimposed upon preexisting osteoarthritis. This belief was based upon the reports of Mrs. McCutcheon's treating physicians.
5. Mrs. McCutcheon is in fact suffering from a fractured odontoid process. This injury is much more serious than the sprain which plaintiffs believed existed. The existence of the fracture and its more serious consequences is set forth in the report of the court-appointed physician.
6. The defendants were aware of the existence of the more serious injury because the report of the court-appointed physician was delivered to them, and it contained a statement, "if the patient is unaware of this situation, she should be informed, as should her treating physician." Mrs. McCutcheon was not informed.
7. The plaintiffs and their counsel were unaware of Mrs. McCutcheon's condition because of mistake, inadvertence, or excusable neglect in reliance upon the reports of physicians who had examined Mrs. McCutcheon.
8. The mistake as to Mrs. McCutcheon's condition was unilateral because defendants' counsel had actual knowledge through the court-appointed physician's report, and the defendants and their counsel failed to reveal the contents of the report.
9. The settlement in the amount of $9,250.00 was a reasonable amount for settlement of Mr. and Mrs. McCutcheon's injuries as plaintiffs believed them to be, but is not a reasonable amount for the injuries which were actually sustained by Mrs. *801 McCutcheon. The $9,250.00 is tendered to the defendants by deposit in the registry of the court.
10. The settlement would not have been accepted by the plaintiffs but for the mistake, inadvertence, or excusable neglect of the plaintiffs and their counsel, and the conduct of the defendants and their counsel.
11. The plaintiff, Donald T. McCutcheon, died on January 8, 1972, and application is made to substitute his administratrix as a party plaintiff.
The defendants filed a motion to strike the plaintiff's motion for relief from judgment upon the ground that the motion for relief was legally insufficient. The trial court found the motion for relief legally sufficient, and after an evidentiary hearing ordered that the final judgment of dismissal be vacated. No other finding of fact was set forth. This appeal followed.
The appellants have presented two points for our review. They claim error because the trial court denied their motion to strike the appellees' motion for relief from the final judgment, and they claim error upon the entry of the order vacating the final judgment. We hold that error has been demonstrated upon each point.
Initially, it is apparent that the appellees, as the moving parties, were met in the trial court with the difficulty of asking the court to set aside a final judgment based upon an executed and presumptively valid settlement agreement. Pursuing the point further, is the settlement contract now rendered void by the trial court's order vacating the final judgment pursuant to Rule 1.540, RCP, 31 F.S.A., or is it still in force and effect? If the settlement contract has also been set aside and declared void, then Rule 1.540 has been used as a substitute for a complaint to declare a contract void upon the ground of unilateral mistake or fraud. Since it would have been clear error for the trial judge to have vacated the judgment while a valid and executed contract of settlement was outstanding, we must presume that the court meant to set aside the settlement contract as well as the judgment. This conclusion is of some importance because the principles of law to be applied in an action to set aside a contract for unilateral mistake or fraud are more stringent than the standards that have so far been established for the setting aside of a judgment pursuant to Rule 1.540 RCP, 31 F.S.A., when the judgment entered pursuant to Rule 1.540 is not based upon a settlement. See Langley v. Irons Land & Development Co., 94 Fla. 1010, 114 So. 769 (1927); Crosby v. Andrews, 61 Fla. 554, 55 So. 57 (1911).
If we examine appellees' motion upon which relief was granted, we see that they in fact assume alternative positions, each of which must be examined. First, it is urged that appellees should be relieved from the settlement and judgment because the plaintiffs and their attorneys made a mistake in fact. Further, they urge that this mistake was due to inadvertence or excusable neglect because they relied upon the reports of the several doctors who had examined Mrs. McCutcheon prior to her examination by the court-appointed physician. Appellees say that this was a "mistake in fact" because they are now sure that Mrs. McCutcheon has a more serious injury. How this moral certainty is reached in the face of the single examination by a court-appointed physician as contrasted to the repeated examinations of the several treating physicians is not clear. Appellees' statement that there were several treating physicians and numerous examinations is confirmed by the discovery which appears even in this limited record. Nevertheless, by leaving aside the matter of the condition of this record as to the existence of the fact of Mrs. McCutcheon's more serious injury, we may accept appellees' statement that a more serious injury indeed exists. The question is: Does the appellees' motion show that the belated discovery of the more serious injury was not *802 in fact the result of their "inadvertence or excusable neglect?"
The axis upon which this appeal turns is the report of the court-appointed physician, so it is necessary to first analyze the rule relating to such reports. Under Rule 1.360(a), RCP, 30 F.S.A., the court may order physical examinations. Such an order was entered on August 26, 1969. The physical examination was conducted on January 29, 1971, with plaintiffs' obvious knowledge, and the court-appointed physician's report appended to plaintiffs' motion was dated August 10, 1971. The contract of settlement is dated October 6, 1971.
Rule 1.360(b), RCP, 30 F.S.A.[2], makes provision for the use of court-appointed physicians' reports. It provides:
"Rule 1.360. Examination of Parties and Property
* * * * * *
"(b) Report of Findings.
"(1) If requested by the person examined, the party causing the examination to be made shall deliver to him a copy of a detailed written report of the examining physician or other expert, setting out his findings and conclusions. After such request and delivery the party causing the examination to be made shall be entitled upon request to receive from the party examined a like report of any examination of the same mental or physical condition previously or thereafter made. If the party examined refuses to deliver such report, on motion and notice the court may make an order requiring delivery on such terms as are just and if a physician or other such qualified expert fails or refuses to make such a report, the court may exclude his testimony if offered at the trial.
"(2) By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the party examined waives any privilege he may have in that action or any other involving the same controversy regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same mental or physical condition." (Emphasis supplied)
The plaintiffs do not allege that they ever requested a copy of the report. The rule itself supplies good tactical reasons for a plaintiff to decide not to request a copy of the report. In fact the tactical price for such a request is quite high. After making a decision not to request a copy and accepting the benefits of the choice, a plaintiff ought not be allowed to label the "mistake" one of "inadvertence or excusable neglect." When the request is not made, the rule simply does not require that the report be furnished to the examined party. Since the plaintiffs never requested the report, the defendants were under no obligation to provide it.
Neglect of counsel is only excusable where it is the result of generally accepted practices and amenities among the local bar. Kash N'Karry Wholesale Supermarkets, Inc. v. Garcia, Fla.App. 1969, 221 So.2d 786. The motion for relief is devoid of any allegation or suggestion that the plaintiffs relied upon any expectation of receiving a copy of the court-appointed physician's report.
Rule 1.540(b), RCP, 31 F.S.A., does not have as its purpose or intent the reopening of lawsuits to allow parties to state new claims or offer new evidence omitted by oversight or inadvertence. See Miami National Bank v. Sobel, Fla.App. 1967, 198 So.2d 841; International Advertising, Inc. v. Congress Enterprises, Inc., Fla.App. 1966, 187 So.2d 364; United States v. $3,216.59 in United States Currency, 41 F.R.D. 433 (D.S.C. 1967). Nor does the rule allow a party to avoid the *803 consequences of a decision to settle litigation even if the party regards the settlement as "bad" in retrospect. See Sampson v. Radio Corporation of America, 434 F.2d 315 (2nd Cir.1970).
The second alternative ground alleged by the plaintiffs in their motion is a suggestion that the defendants and their counsel had actual knowledge of the court-appointed physician's report but failed to reveal the contents of the report. We have noted that Rule 1.360(b), RCP, 30 F.S.A., does not require that the report of the court-appointed physician be furnished to the examined party in the absence of an election by that party to request a copy of the report. We have also noted that the motion does not allege a custom or practice to furnish such a copy when it is not requested. But appellees urge that there is a species of "fraud" or "misconduct" to be found in the fact that the defendants knew that Mrs. McCutcheon had sustained the serious injury in question, the fractured odontoid process, and, perhaps more importantly, knew that Mrs. McCutcheon and her lawyers were not aware of this serious injury when they effected a settlement very favorable to the defendants.
Two cases from other jurisdictions are cited for our consideration. The first is Denton v. Utley, 350 Mich. 332, 86 N.W.2d 537 (1957). It dealt with an action to set aside a release from liability for personal injury given to an insurance company for $50.00. The trial court found that the release was obtained by fraudulent representation, mistake, undue influence, and grossly inadequate consideration. The judgment was affirmed. The holding has little application here, and the language quoted in the appellees' brief simply follows the rule that in determining whether a release is to be set aside a chancellor is governed by the broad principles of equity. The second is Schoenfeld v. Buker, 262 Minn. 122, 114 N.W.2d 560 (1962). This case dealt with an appeal from the trial court where an order denying a motion to set aside stipulation of dismissal for leave to amend a complaint and for reinstatement of the cause on the trial calendar was affirmed. The Supreme Court of Minnesota held that one is not entitled to vacate a stipulation of dismissal where injuries had manifested themselves after the settlement. The court, in reaching its conclusion, placed heavy emphasis upon the fact that both litigants acted without knowledge of the probability of the later consequences of the injury. The court stated that there must be concealment or at least knowledge on the part of one party that the other party is laboring under mistake in order to set aside a release for unilateral mistake. Applying this test to the cause presently before us, it is apparent that there could be no concealment because the plaintiffs had a clear method of procuring the report but chose not to exercise it. It is likewise clear that the defendants' knowledge of a report which was part of the court proceedings and to which plaintiffs had access, is not the kind of unfair advantage to which the Minnesota court had reference. We think that the dicta in the Minnesota case, as interpreted by appellees, would have the result of imposing upon trial attorneys a duty to advise a plaintiff represented by competent counsel of every fact within a defendant's knowledge which might be material to the plaintiff. Such a holding would be contrary to the adversary system for the determination of truth.
The appellees have raised an objection to the consideration of this appeal which should be mentioned. The appellees urge that the court should affirm the order appealed because the appendix of the appellant is insufficient in that it lacks a trial transcript and exhibits. We have previously mentioned the fact that the trial court committed error when it held that the appellees' motion alleged an actionable ground for relief. Having so held, it is not necessary for us to examine a trial transcript of the evidentiary hearing before the court in order to determine whether error exists.
*804 Having concluded that the trial court abused its discretion in setting aside the final judgment entered upon a valid stipulation of settlement, and that the court erroneously failed to grant appellant's motion to strike the appellee's motion for relief pursuant to Rule 1.540, RCP, 31 F.S.A., we reverse the order setting aside the final judgment heretofore entered in this cause, and remand the cause with directions to grant the defendant's motion to strike the motion for relief and to reestablish the final judgment heretofore entered in this cause.
Reversed and remanded.
NOTES
[1] "Rule 1.540. Relief from Judgment, Decrees or Orders

"(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, decree, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect;
* * * * *
"(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; ...".
* * * * *
[2] An amended text of Rule 1.360 entitled "Physical and Mental Examination of Persons" will become effective January 1, 1973.