687 So.2d 982 (1997)
Brent D. SCHLAPPER, D.O., et al., Appellants,
v.
Michael MAURER, et al., Appellees.
No. 95-877.
District Court of Appeal of Florida, Fifth District.
February 19, 1997.
*983 Jeffrey S. Badgley of Sanders, McEwan, Martinez, Luff & Dukes, P.A., Orlando, for Appellants.
Larry Sands of Sands, White & Sands, P.A., Daytona Beach, for Appellees.
W. SHARP, Judge.
Dr. Schlapper appeals from a non-final order vacating a final summary judgment, which had dismissed Dr. Schlapper as a party from a medical malpractice case. The Maurers (Michael and his wife, Mary Jane) filed a motion pursuant to Florida Rule of Procedure 1.540(b) to set aside the summary final judgment on the ground that Dr. Schlapper's attorney misrepresented a crucial fact to the Maurers' attorney, prior to the summary judgment, and in reliance on that misrepresentation, the Maurers' attorney did not oppose or appear at the summary judgment hearing. After an evidentiary hearing, the trial judge granted the relief requested. We affirm.
The record established that Michael suffered a heart attack (an acute anterior myocardial infarction) in the early morning hours of April 18, 1990. He was admitted to the West Volusia Memorial Hospital in Deland, at 2:48 a.m. An emergency room physician began treating him, followed by a cardiologist at 6:00 a.m., and Dr. Rankin, his general family physician, at 8:00 a.m. Dr. Schlapper was Dr. Rankin's partner or co-owner of their medical professional association. The lawsuit sought to prove that all of the above persons were negligent because they failed to employ and administer thrombolytic therapy following Michael's heart attack, which would have prevented or minimized the permanent damage Michael suffered to his heart muscle.
Initially, the Maurers did not allege that Dr. Schlapper was personally involved in the treatment of Michael. They claimed he bore a vicarious liability for the acts of Dr. Rankin and the professional association. Dr. Schlapper filed affidavits in support of the summary judgment motion designed to dismiss him from the case, which established that he was only an employee of the professional association, and that he was not Dr. Rankin's supervisor or partner. The summary judgment was correctly entered on that basis.
At the hearing on the Maurers' motion to set aside the final summary judgment in Dr. Schlapper's favor, it was disclosed that prior to filing the law suit, the Maurers obtained records from the hospital emergency room, which revealed that shortly after Michael's treatment began in the emergency room, the emergency room physician called Dr. Schlapper. This notation was practically illegible because of the poor handwriting of the person who made the entry.
Although the notation was illegible to most people, the Maurers' expert witness read it. In a February 1993 letter, the expert witness told the Maurers' attorney that the note existed, and advised him to investigate it further, specifically as to when Dr. Schlapper was contacted. However, the attorney did not conduct further discovery before dealing with the summary judgment motion.
The crucial testimony supporting the trial court's order vacating the summary judgment came from the Maurers' attorney. His testimony was that just prior to the hearing on the motion for summary judgment, the *984 attorney for Dr. Schlapper and the attorney for the Maurers discussed the issues in the case. During that conversation, the attorney for Dr. Schlapper represented to the attorney for the Maurers that "Dr. Schlapper had nothing to do with the treatment of Mr. Maurer." Based on that representation, the attorney for the Maurers did not oppose the summary judgment which dismissed Dr. Schlapper from the case.
Subsequently, a new attorney for the Maurers deposed both the emergency room physician and Dr. Schlapper. It was discovered that the emergency room physician initially called Dr. Schlapper from the hospital, not Rankin, shortly after Maurer was admitted to the emergency room. Thus there may have been a basis upon which to establish active, rather than vicarious, liability on the part of Dr. Schlapper.
We agree with Dr. Schlapper that the Maurers' first attorney did not act with due diligence and that the evidence which potentially supports active negligence on the part of Dr. Schlapper could have been discovered prior to the summary judgment hearing. See Viking General Corp. v. Diversified Mortgage Investors, 387 So.2d 983, 986 (Fla. 2d DCA 1980), rev. denied, 394 So.2d 1154 (Fla.1981). Thus it does not qualify as "newly discovered" evidence sufficient to permit the setting aside of the final summary judgment pursuant to Florida Rule of Civil Procedure 1.540(b)(2).
However, we think this scenario does supply grounds for setting aside the final summary judgment pursuant to Florida Rule of Civil Procedure 1.540(b)(3). That provision allows the setting aside of a final judgment if procured thorough
[f]raud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party....
Although the attorney for Dr. Schlapper had no duty to disclose to the court or to opposing counsel the existence of facts upon which a finding of liability against his client might be predicated, his professional responsibility owed to the court and the opposing parties imposed on him an obligation not to lie about or misrepresent facts critical to the case. (emphasis added)
The dissent relies upon American Republic Insurance Co. v. Westchester General Hospital, 414 So.2d 1163 (Fla. 3d DCA 1982) and Rubenstein v. Richard Fidlin Corp., 346 So.2d 89 (Fla. 3d DCA 1977), as being distinguishable from this case because those cases involved misrepresentations of procedural matters. The key issue in those cases is not that they involved misrepresentations of procedural matters rather than factual matters. Rather, the holdings are based on the unconscionability of the conduct of the attorneys on behalf of their clients, and the other party's attorney's reliance on the misrepresentations made.
In American Republic, the Third District found it was a "gross abuse of discretion" because the attorney for the plaintiff misled counsel for the defendant, causing the defendant to rely on misrepresentations to its detriment. In Rubenstein, the court termed it unconscionable in a case where the attorney for the defendants was misled by and relied upon the plaintiff's attorney's misrepresentations. The Rubenstein court explained:
In the instant case, however, the defendants were misled by the plaintiff into believing that it was unnecessary to file any responsive pleadings because of ongoing settlement negotiations.
Under these circumstances, we believe it was unconscionable for the plaintiff to take advantage of the defendants' failure to file responsive pleadings by obtaining a default judgment without notice to the defendants. The law is well-settled that a party is estopped from asserting legal rights to the detriment of another party when to do so would be unconscionable. [citations omitted]
We, therefore, hold that a plaintiff may not obtain a default judgment ... when the plaintiff has misled the defendant into believing that it was unnecessary to file any responsive pleadings....
Rubenstein at 91. American Republic relies upon Rubenstein, and its holding is identical.
*985 These cases establish that relief from a judgment should be granted to a party whose attorney has relied on the misrepresentations of the other party's attorney. Reliance is one of four elements required before a court should grant relief from fraudulent misrepresentations. Johnson v. Davis, 480 So.2d 625 (Fla.1985); Lance v. Wade, 457 So.2d 1008 (Fla.1984). The recipient of a misrepresentation may rely on the veracity of a statement made to him or her, unless the falsity is obvious or known. Besett v. Basnett, 389 So.2d 995 (Fla.1980). The trial court's order in this case is presumptively based on a finding that Maurer's attorney reasonably relied on the misrepresentations of Dr. Schlapper's attorney, to the detriment of Maurer.
American Republic and Rubenstein involve misrepresentations by an attorney that no default would be sought during settlement negotiations. In this case, the Maurers' attorney relied upon Dr. Schlapper's attorney's misrepresentation that Dr. Schlapper was not in any way involved in Maurer's treatment. Although the deviousness of counsel's actions are more apparent in American Republic and Rubenstein, we think it is equally unconscionable to mislead opposing counsel about a critical factual matter, thereby procuring his cooperation in dismissing the representator's client from the case.
To condone this behavior on the ground that the misrepresentation pertained to a factual matter rather than a procedural matter is a false distinction, and one that does not comport with the standard of professional behavior imposed upon those who would practice law in this state. Misrepresentations to colleagues and other parties are prohibited by the Rules of Ethics. Attorneys as officers of the courts in our legal system are required to be honest above all else in their professional dealings with others. Preamble, Rules of Professional Conduct. Rule 4-4.1 Rules of Conduct provides:
In the course of representing a client a lawyer shall not knowingly:
(a) Make a false statement of material fact or law to a third person; ... with others on a client's behalf.
Because of the attorney-client privilege, and the attorney's fiduciary duty owed to a client, an attorney has no affirmative duty to inform an opposing party or attorney as to the existence of relevant facts. But misrepresentations about facts, as well as procedures and future conduct likewise is forbidden. Any other rule would create havoc, prolong litigation, and make the prosecutions of a lawsuit nasty and disreputable. An attorney has the option of keeping silent, refusing to answer, changing the subject or referring counsel to the discovery process. But he or she cannot misstate the facts.
AFFIRMED.
PETERSON, C.J., concurs in result only.
THOMPSON, J., dissents with opinion.
THOMPSON, Judge, dissenting.
I respectfully dissent. I would reverse the order vacating the final summary judgment in favor of defendant, Brent D. Schlapper, D.O., and would find that the Maurers are not entitled to relief pursuant to Florida Rule of Civil Procedure 1.540. Specifically, I would find the Maurers are not entitled to relief because of allegations that their attorney misrepresented Dr. Schlapper's involvement in the case. These are the facts.
The plaintiffs, Michael and Mary June Maurer, sued Schlapper and others alleging negligence in the treatment Michael Maurer received when he was admitted to West Volusia Memorial Hospital with a heart attack. The Maurers alleged that the emergency room physician telephoned Michael Maurer's family physician, Bruce G. Rankin, D. O., in the early morning hours to discuss Maurer's condition. They further alleged that Rankin was negligent in failing to administer at that time thrombotic therapy, which would have prevented or minimized damage to Maurer's heart muscle. The cause of action against Schlapper was grounded on the theory that, as Rankin's partner, he was vicariously liable for Rankin's alleged negligence. There was no allegation of any active negligence on Schlapper's part.
On 20 July 1993 the court entered final judgment in favor of Schlapper based on the uncontroverted affidavits of Schlapper and *986 Rankin that they were employed by the same professional association but that Schlapper was not Rankin's partner and that Schlapper did not exercise any supervision or control over Rankin's practice of health care.
In January 1994, the Maurers' new counsel moved to vacate the judgment in favor of Schlapper pursuant to Florida Rule of Civil Procedure 1.540. At the hearing on the motion, the evidence showed that, before filing suit, the Maurers obtained records which showed that the emergency room physician had telephoned Schlapper. Although the emergency room physician's entry, "spoke with Dr. Schlapperadmit" was nearly illegible, the Maurers' medical expert was apparently able to read it. Prior to the hearing on Schlapper's motion for summary judgment, the medical expert advised the Maurers' first attorney of the entry and of the need to determine when the emergency room physician spoke with Schlapper. Despite this advice, the first attorney did not conduct further discovery with regard to Schlapper's involvement in the case. The evidence also showed that, prior to entry of summary judgment in favor of Schlapper, the Maurers' first attorney discussed the upcoming hearing with Schlapper's attorney. The Maurers' first attorney made the allegation, contested by Schlapper's attorney, that during the discussion, Schlapper's attorney said that Schlapper "had nothing to do with the treatment of Mr. Maurer." In fact, when their new attorney deposed Rankin and Schlapper in December 1993, after the entry of the final judgment, it was shown that the emergency room physician called Schlapper, and not Rankin, from the hospital. The Maurers asserted that in reliance on the alleged misrepresentation by Schlapper's attorney, their first attorney did not appear at the summary judgment hearing. After the hearing on the Maurers' motion, the court entered orders vacating the final judgment and allowing the Maurers to amend their complaint.
Florida Rule of Civil Procedure 1.540(b) provides in part:
On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, decree, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;....
The Maurers were not entitled to relief on the ground of newly discovered evidence because their first attorney did not act with due diligence and because the evidence that Schlapper had some personal involvement in Michael Maurer's care was not newly discovered. See Taylor v. Texgas Corp., 831 F.2d 255, 259 (11th Cir.1987).[1]
Similarly, the Maurers were not entitled to relief on the ground of inadvertence or excusable neglect. Randle-Eastern Ambulance Serv. v. Vasta, 360 So.2d 68, 69 (Fla. 1978) ("[I]t has never been the role of the trial courts of this state to relieve attorneys of their tactical mistakes. The rules of civil procedure were never designed for that purpose, and nothing in Rule 1.540(b) suggests otherwise."); accord, Miller v. Fortune Ins. Co., 484 So.2d 1221, 1223 (Fla.1986); Taylor (necessary finality of litigation prohibits giving parties' second chance at proof they had available in first instance but overlooked or chose not to use); Smiles v. Young, 271 So.2d 798 (Fla. 3d DCA), cert. denied, 279 So.2d 305 (Fla.1973) (rule 1.540(b) does not have as its purpose or intent the reopening of lawsuits to allow parties to offer new evidence omitted by oversight).
Nor were the Maurers entitled to relief because neither Schlapper nor his attorney *987 informed the Maurers of material facts which might support a cause of action against Schlapper based on active negligence. Imposing such a duty "would be contrary to the adversary system for the determination of truth." Smiles, 271 So.2d at 803; Kerwit Medical Products, Inc. v. N. & H. Instruments, Inc., 616 F.2d 833, 837 (5th Cir.1980) ("mere nondisclosure to an adverse party and to the court of facts pertinent to a controversy before the court does not add up to fraud upon the court for purposes of vacating a judgment under [Federal Rule of Civil Procedure] 60(b)...."); Naxon Telesign Corp. v. GTE Info. Sys. Inc., 89 F.R.D. 333, 337 (N.D.Ill.1980) (judgment cannot be vacated on ground of alleged fraud or misconduct unless production of certain evidence clearly called for by fair reading of discovery order) (quoting Martz v. Miller Bros., 244 F.Supp. 246, 252 (D.Del.1965)).
The final issue is whether vacation of the final judgment was justified by the alleged misrepresentation by Schlapper's counsel regarding Schlapper's involvement in Michael Maurer's care.[2] Relief from judgment has been upheld where an opposing counsel misrepresents procedural matters. American Republic Ins. Co. v. Westchester Gen. Hosp., 414 So.2d 1163 (Fla. 3d DCA 1982); Rubenstein v. Richard Fidlin Corp., 346 So.2d 89, 91 (Fla. 3d DCA 1977); see also, Atchison, Topeka & Santa Fe Ry. Co. v. Matchmaker Inc., 107 F.R.D. 63, 65 (D.Col.1985).
Research, however, shows no case in which relief from judgment has been granted where opposing counsel has made a misrepresentation regarding a fact that could be adduced via discovery. Further, not only was Schlapper's involvement a discoverable fact, the Maurers' had information through their expert's letter that Schlapper was involved in Michael Maurer's care. Under these circumstances, I would hold that the Maurers were not justified in relying on the alleged misrepresentation. See Besett v. Basnett, 389 So.2d 995 (Fla.1980). Accordingly, I would decline to apply rule 1.540 to cases in which there is an alleged misrepresentation of a discoverable fact, especially when the recipient of the alleged misrepresentation already possesses the correct information.
Finally, I would dismiss the appeal of the order allowing the Maurers to amend their complaint. Waller v. Waller, 650 So.2d 193, 194 (Fla. 2d DCA 1995); Fla. R.App. P. 9.130(a), State Farm Mut. Auto. Ins. Co. v. Lenard, 531 So.2d 180, 181 (Fla. 2d DCA 1988).
NOTES
[1] Because Federal Rule of Civil Procedure 60(b) is substantially the same as Florida Rule of Civil Procedure 1.540(b), the "construction given Federal Rule 60(b) by the federal courts is persuasive authority for construing Florida Rule 1.540(b)." Crocker Invs., Inc. v. Statesman Life Ins. Co., 515 So.2d 1305, 1307 n. 2 (Fla. 3d DCA 1987), rev. denied, 525 So.2d 877 (Fla.1988); see also Department of Transp. v. Bailey, 603 So.2d 1384, 1386 (Fla. 1st DCA 1992); Avery Dev. Corp. v. Village by the Sea Condominium Apartments, Inc., 539 So.2d 616, 618 n. 1 (Fla. 4th DCA 1989).
[2] The trial court made no finding in this regard.