# Third District Court of Appeal

## State of Florida

Opinion filed November 17, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-1118
Lower Tribunal No. 16-32717
_____

## JPMorgan Chase Bank, N.A.,

Appellant,

vs.

## Jorge Llovet, et al.,

Appellees.

An Appeal from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

León Cosgrove, LLP, and Derek E. León, Andrew B. Boese, and John R. Byrne, for appellant.

Jacobs Legal, PLLC, and Bruce Jacobs, for appellee Jorge Llovet.

Before EMAS, LOGUE, and HENDON, JJ.

LOGUE, J.

JPMorgan Chase Bank, N.A., a non-party to the litigation below, seeks review of the denial of its motion for a protective order from post-judgment discovery. For the reasons stated below, we reverse.

**BACKGROUND**

On September 7, 2005, Llovet borrowed $1,340,000 from Washington Mutual Bank, FA, and signed both a note and mortgage. On or around April 1, 2012, Llovet stopped making payments.

On December 22, 2016, U.S. Bank N.A., successor Trustee to Bank of America, N.A., successor in interest to LaSalle Bank N.A., on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2005-AR15 (the "Plaintiff Trust"), filed a foreclosure action against Llovet. After amendments, the operative July 20, 2017 complaint consisted of one foreclosure count. Attached was a copy of the note with a signed, undated indorsement reading: "Pay to the order of _____ Without Recourse Washington Mutual Bank, FA by Cynthia Riley, Vice President."[1] Referring to the attachment, the Plaintiff Trust alleged it was "the holder in possession of the blank-endorsed original Note and Mortgage at the time this action was commenced on December 22, 2016, and pursuant to section 673.3011,

---

[1] Although either is acceptable, we use "indorsement" rather than "endorsement" because that spelling is adopted by Florida's Uniform Commercial Code under Chapter 673 of the Florida Statutes.

2

Florida Statutes, is entitled to enforce the Note and Mortgage." In the operative August 10, 2017 amended answer, Llovet made a general denial of all allegations in the complaint and raised lack of standing as an affirmative defense.

After the case was placed on a trial calendar, the parties settled. Llovet agreed to the entry of a consent judgment of foreclosure in return for the Plaintiff Trust's agreement to waive a deficiency judgment and to delay the foreclosure sale. At a February 7, 2018 hearing, the trial court entered the consent judgment and canceled the original note, which appears in the court file. The consent final judgment set a sale date of May 8, 2018.

On April 5, 2018, Llovet filed a motion pursuant to Florida Rule of Civil Procedure 1.540(b) to vacate the consent judgment for fraud. Llovet's motion to vacate raised the issue of standing that he had previously raised in his answer. This time, however, he asserted that the Plaintiff Trust's assertion of standing was not simply incorrect but that it was fraudulent. Llovet's claim is based on the alleged fraud arising from the securitization of Llovet's loan.

Llovet's original lender was Washington Mutual Bank. In 2005, within six months of Llovet signing the loan, Washington Mutual joined Llovet's loan with other loans making a $2.5-billion-dollar package for securitization and sale to investors. As part of the transfer of the mortgages from Washington

3

Mutual to the Plaintiff Trust, the Pooling and Servicing Agreement required Washington Mutual to indorse the mortgages either "(A) in blank, without recourse, (B) to the Trustee, without recourse, or (C) to the Trust, without recourse."

Securitization also involved a contract to retain a loan servicer as agent for the Trust.[2] Over the life of Llovet's loan, there were three separate loan servicers. When Washington Mutual securitized the loan, it continued to act as loan servicer for the note and mortgage and as the agent for the Plaintiff Trust. In the next decade, Washington Mutual developed financial troubles and went into receivership with the Federal Deposit Insurance Corporation. As receiver, the FDIC sold Washington Mutual's banking operations to Appellant, JPMorgan Chase Bank, N.A. The sale included "all mortgage servicing rights and obligations of [Washington Mutual.]." JPMorgan Chase thus became the second loan servicer. Subsequently, Select Portfolio Servicing, Inc. took over the loan servicing. While the entity servicing the

---

[2] Servicing the loan entails collecting the monthly payment and making disbursements to the Plaintiff Trust, and paying applicable property taxes, property insurance, and even foreclosing on the note. The servicer is entitled to take its fees and costs out of the funds it collects. Servicing of loans can be a profitable business separate and apart from lending. It is important to keep in mind, however, that even when the loan servicer is enforcing the note (including foreclosing), it is doing so only as the servicing agent—not the owner—of the note. The legal owner remains the Trust.

loan changed, there is nothing in the record indicating that the Plaintiff Trust ever transferred its legal ownership of the note.

As mentioned above, the original note of Llovet's loan contains an undated, blank indorsement signed by Cynthia Riley as Vice President of Washington Mutual. In his motion to vacate under Rule 1.540, Llovet asserts that Riley's indorsement was fraudulent: "JP Morgan Chase affixed the Cynthia Riley endorsement years after [Washington Mutual] ceased to exist and Cynthia Riley lacked any authority to negotiate assets of [Washington Mutual]." The motion has attached to it 278 pages of documents as exhibits.

Llovet served a subpoena duces tecum on JPMorgan Chase seeking discovery to support his assertion that the Riley indorsement was unauthorized. Among other things, Llovet sought "the complete chain of any sale or purchase of . . . [the] loan" including screen shots of any images of the notes and all communications, contracts, manuals, policies, and procedures concerning the loan and other specified loans. JPMorgan Chase filed a motion for protective order. The trial court limited the production to documents and manuals relating to the subject loan, but otherwise denied JPMorgan Chase's motion. JPMorgan Chase timely sought review.

## ANALYSIS

We have jurisdiction.[3] JPMorgan Chase argues that Llovet cannot re-open a consent judgment to obtain discovery regarding matters that he knew or should have known about and for which he could have sought discovery before he entered into the consent judgment. In support, JPMorgan Chase correctly notes that Llovet is trying to use Rule 1.540 as a vehicle to set aside not only the consent judgment but also his written agreement to settle. This aspect of the case "is of some importance because the principles of law to be applied in an action to set aside a contract for unilateral mistake or fraud are more stringent than the standards that have so far been established for

---

[3] We have held that an order compelling a non-party to produce discovery "is, indeed, a final order as to [it]." United Servs. Auto. Ass'n v. Law Offs. of Herssein & Herssein, P.A., 233 So. 3d 1224, 1230 n.6 (Fla. 3d DCA 2017); see also Varela v. OLA Condo. Ass'n, 279 So. 3d 266, 267 n.1 (Fla. 3d DCA 2019) ("We note that Varela properly sought review through a notice of appeal rather than a petition for certiorari in this case because she is not a party to the litigation below. The order on appeal ended all judicial labor in the case as to Varela and constitutes a final appealable order."); Fla. House of Representatives v. Expedia, Inc., 85 So. 3d 517, 520 (Fla. 1st DCA 2012) (finding that an order compelling discovery by nonparties was final because it "adjudicates the legal rights of nonparties and because it otherwise meets the general test of finality"); Office of the Pub. Def. v. Lakicevic, 215 So. 3d 112 (Fla. 3d DCA 2017) (treating an order denying the public defender's motion for a protective order from a third-party subpoena duces tecum for deposition as a final order reviewable on appeal, rather than via a petition for writ of certiorari). Nevertheless, treating this matter as a petition for certiorari would yield the same result. See Fla. R. App. P. 9.040(c).

the setting aside of a judgment pursuant to Rule 1.540." Smiles v. Young, 271 So. 2d 798, 801 (Fla. 3d DCA 1973) (citations omitted).

In Smiles, we reversed the grant of a motion to vacate a consent judgment under Rule 1.540 because the motion failed to state a ground for relief when it merely identified information in the hands of the opposing party that would have caused the complaining party to refuse to settle. This was because the complaining party could have and failed to properly pursue the information in discovery before entering into the consent judgment. Id. In so holding, we explained that Rule 1.540(b) "does not have as its purpose or intent the reopening of lawsuits to allow parties to state new claims or offer new evidence omitted by oversight or inadvertence." Id. 802–03. "Nor does the rule allow a party to avoid the consequences of a decision to settle litigation even if the party regards the settlement as 'bad' in retrospect." Id.

We have recently reiterated the holding of Smiles in the foreclosure context in Bank of New York Mellon v. Simpson, 227 So. 3d 669, 671 (Fla. 3d DCA 2017). Using the standard set forth in Smiles, we reversed a grant of a motion to vacate a consent final judgment of foreclosure because the allegations "were known and could have been discovered by due diligence at the time the foreclosure suit" was pending. We concluded that "Rule 1.540(b) does not have as its purpose or intent the reopening of lawsuits to

7

allow parties to state new claims or offer new evidence omitted by oversight or inadvertence." Id. at 670.

Applying this law to the instant case, we agree with JPMorgan Chase that Llovet is barred from re-opening discovery post-judgment because the discovery he now seeks could have been requested pre-judgment. Llovet was obviously aware of the standing issue before he consented to the final judgment because he raised lack of standing as an affirmative defense in his answer. The arguments and materials Llovet offered in support of his Rule 1.540 motion predate the 2018 consent final judgment and include:

- Deposition of Cynthia Riley, JPMorgan Chase Bank, N.A. v. Orozco, No. 2009-29997-CA (Fla. 11th Cir. Ct. Jan. 15, 2013);[4]

- Consent Order, U.S. Dep't of the Treasury, Comptroller of the Currency, In re JPMorgan Chase Bank, N.A., AA-EC-11-15, 2011 WL 6941542 (April 13, 2011);[5] and

---

[4] Riley, a Washington Mutual official, testified that Llovet's indorsement was done properly and timely, albeit on a mass basis. See § 673.4011(2)(a), Florida Statutes ("A signature may be made . . . [m]anually or by means of a device or machine."). Although filed by Llovet, this document undercuts his claim. In any event, this deposition predates the consent judgment.

[5] JPMorgan Chase agreed to not litigate future foreclosure proceedings without ensuring the proper indorsement of notes. But JPMorgan Chase expressly did not admit "any wrongdoing." JPMorgan Chase's commitment in this regard without any admission falls far short of indicating that Riley's indorsement on Llovet's loan was fraudulent. See Simpson, 227 So. 3d at 671 (holding fraud cannot be established by "generalized complaints about the mortgage banking industry" that "have no specific relation to the facts of this case"). In any event, this document also predates the consent judgment.

- Order Granting Final Judgment to Defendant, <u>Wells Fargo Bank, N.A. v. Riley</u>, No. 2016-010759-CA (Fla. 15th Cir. Ct. Dec. 12, 2017).[6]

Llovet makes no attempt to explain why due diligence would not have provided him these materials and arguments prior to his agreement to the consent judgment.

**CONCLUSION**

"[L]itigation must, at some point, come to an end." <u>Witt v. State</u>, 387 So. 2d 922, 925 (Fla. 1980). The right to conduct discovery post-judgment is much more limited than the right to conduct discovery pre-judgment. Here, the trial court committed reversible error in allowing Llovet to re-open a final judgment to obtain discovery regarding matters that Llovet could have, through the exercise of due diligence, obtained prior to entry of the final consent judgment. Allowing such discovery amounts to licensing an impermissible "fishing expedition[] in post-judgment proceedings." <u>Rooney v. Wells Fargo Bank, N.A.</u>, 102 So. 3d 734, 736 (Fla. 3d DCA 2012).

Reversed.

---

[6] This case involved different parties, a different note, mortgage, trial court, record, and even different legal issues. More importantly, it conflicts with cases like <u>HSBC Bank USA, Nat'l Ass'n v. Buset</u>, 241 So. 3d 882, 885 (Fla. 3d DCA 2018). In any event, this too predates the consent judgment.

9